IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

THE COMMONWEALTH OF VIRGINIA,
VIRGINIA OFFICE FOR PROTECTION
AND ADVOCACY,

    Plaintiff,

v.                                     Civil Action No. 3:07cv734

JAMES S. REINHARD, in his
official capacity, etc.
et al.,

    Defendants.

**MEMORANDUM OPINION**

This matter is before the Court on the Renewed Motion to Dismiss (Docket No. 22) the Complaint filed by the Virginia Office for Protection and Advocacy ("VOPA") against James Reinhard, Denise Micheletti, and Charles Davis in their official capacities as the directors or officers of the Department of Mental Health, Mental Retardation and Substance Abuse Services ("DMHMRSAS"), the Central Virginia Training Center ("CVTC"), and the Central State Hospital ("CSH"). VOPA alleges that the Defendants are violating federal law by refusing to grant it access to records to which it is entitled under its enabling statutes. Accordingly, VOPA seeks declaratory and injunctive relief. Defendants argue that the Complaint should be dismissed

1

either under Fed. R. Civ. P. 12(b)(1), on sovereign immunity grounds, or Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted. For the reasons set forth below, the motion to dismiss will be denied.

## BACKGROUND

VOPA is Virginia's Protection and Advocacy system for persons with disabilities, a system created under the aegis of federal statute. See Development Disabilities Assistance and Bill of Rights Act ("DD Act") 42 U.S.C. § 15001, et. seq., and its implementing regulations, 45 C.F.R. § 1385, et. seq.; the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI Act"), 42 U.S.C. § 10801, et. seq.[1] Eligible protection and advocacy systems, including VOPA, have the authority to investigate incidents of abuse and neglect of individuals with developmental disabilities. 42 U.S.C. §§ 15043, 10805; Code of Va. § 51.5-39.4. Federal law also affords protection and advocacy systems, such as VOPA, access to the records of individuals who are the subjects of investigations where certain

---

[1] Prior to amendment by Public Law 106-310 in 2000, the Act was known as the "Protection and Advocacy for Mentally Ill Individuals Act of 1986," or "PAMII." See 42 U.S.C.A. § 10801 (Thomson Reuters/West 2008). In 2000, Congress amended the short title so that the Act is now known as the "Protection and Advocacy for Individuals with Mental Illness Act" or "PAIMI." See id.; Prot. & Advo. for Pers. with Disabilities v. Mental Health & Addiction Servs., 448 F.3d 119, 120 n.1 (2d Cir. 2006). This opinion shall refer to the Act as the "PAIMI Act," as it was alleged in the Complaint, even where an individual court has described it as PAMII in its opinion.

2

conditions are met, including where there is probable cause to believe that such individual has been subject to abuse or neglect. 42 U.S.C. §§ 15043, 10805, 10806.

As alleged in the Complaint, VOPA is seeking records related to three incidents of deaths and injuries of residents of CVTC and CSH while in the custody of DMHMRSAS. DMHMRSAS has refused to provide the requested records, claiming peer review privilege. VOPA asserts that it is entitled to receive this information under federal law and that it is unlawful for DMHMRSAS to restrict VOPA's ability to conduct statutorily authorized investigations. VOPA is suing the Commissioner and the Directors of the respective organizations in their official capacities and requesting injunctive relief.

Defendants do not challenge the sufficiency of the factual allegations, but move the Court to dismiss the case on two grounds. First, Defendants argue that the case should be dismissed for failure to state a claim under Rule 12(b)(6) because their refusal to turn over the records comports with a federal regulation, and thus cannot form the basis for an allegation of a violation of federal law. Second, Defendants argue that they are protected by sovereign immunity and that the case should be dismissed under Rule 12(b)(1). As explained below, both of these arguments fail.

## DISCUSSION

### A. Standards of Review

#### 1. Failure to State a Claim under Rule 12(b)(6)

To survive a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). To meet this standard, "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. at 1965, and critical elements of a claim must be, at a minimum, "suggested by the facts." Id. at 1973. A plaintiff must provide "more than labels and conclusions" and the Court specifically noted the insufficiency of "a formulaic recitation of the elements of a cause of action." Id. at 1965. Notwithstanding the plausibility requirement of Bell Atlantic, courts still "should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

#### 2. Sovereign Immunity Analysis under Rule 12(b)(1)

An assertion of sovereign immunity is properly addressed under Fed. R. Civ. P. 12(b)(1). Smith v. Washington Metro. Area Transit Auth., 290 F.3d 201, 205 (4th Cir. 2002). If a governmental entity challenges jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of persuasion. Id. A court may

4

address its lack of subject matter jurisdiction in two ways: it may find insufficient allegations in the pleadings, viewing the alleged facts in the light most favorable to the plaintiff, similar to a 12(b)(6) inquiry; or, after an evidentiary hearing, the court may weigh the evidence in determining whether the facts support the jurisdictional allegations. <u>Lovern v. Edwards</u>, 190 F.3d 648, 655 (4th Cir. 1999). The parties have neither requested an evidentiary hearing, nor briefed the sovereign immunity issue under that mode of analysis, so the Court will proceed according to the first method.

B. **Analysis**

1. **Sufficiency of the Complaint**

Defendants argue that VOPA has not stated a plausible claim for relief because their refusal to turn over the requested materials is in compliance with federal regulations; and, therefore, refusal to turn over the records cannot be a violation of federal law. Defendants claim that, unless VOPA is able to prove that the challenged regulations are invalid, VOPA cannot state a cognizable claim.

VOPA has clearly alleged an ongoing violation of federal law: that the Defendants refuse to provide records that are required to be provided to VOPA by the PAIMI and DD Acts. The Defendants argue that their actions are insulated because their records are covered by state peer review privilege, Va. Code §§

8.01-581.16, 581.17, and by federal regulations which provide that state law protections for records are not preempted. 42 C.F.R. § 51.41(c)(4), 45 C.F.R. 1386.22(c)(1). The argument of the Defendants is an affirmative defense to the merits of the Complaint and, as such, is not appropriate for resolution under Rule 12(b)(6). "[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Presley v. City of Charlottesville, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotations and citations omitted).

### 2. Sovereign Immunity

States enjoy a sovereign immunity from private suits. Alden v. Maine, 527 U.S. 705 (1999). Much of modern day sovereign immunity jurisprudence has been developed from the Eleventh Amendment, but sovereign immunity is broader than the strictures of the Eleventh Amendment. Id. at 712-13. There are three dominant exceptions to sovereign immunity. First, Congress may abrogate sovereign immunity if: (1) it validly acts "pursuant to a constitutional provision granting Congress the power to abrogate"; and (2) it has "unequivocally expressed its intent to abrogate the immunity." Seminole Tribe of Florida v. Florida, 517 U.S. 44, 55, 59 (1996). This exception is not at issue in this action. Second, states may voluntarily waive

sovereign immunity from suit either by explicitly consenting to suit, or by accepting from Congress a gift or gratuity that is conditioned on such a waiver. Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985); College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666 (1999). Finally, federal courts have jurisdiction in certain cases over suits that seek prospective injunctive relief against a State officer alleged to be perpetrating an ongoing violation of federal law. See Ex parte Young, 209 U.S. 123 (1908).

### a. Waiver by the State

VOPA argues that, given the statutorily defined purpose and mission of protection and advocacy systems, the text of the DD Act puts the States on notice that the receipt of "federal funds to which the protection and advocacy system requirements attach" constitutes a waiver of sovereign immunity. (Pl.'s Resp. to Def.'s Renewed Mot. to Dismiss 7.) The statutory predicate for VOPA's position provides that: "Nothing in this title shall preclude a system from bringing a suit on behalf of individuals with developmental disabilities against a State, or an agency or instrumentality of a State." 42 U.S.C. § 15044(b)(1).

Defendants make a three-pronged argument as to why there is no waiver: first, the statute does not constitute a waiver of sovereign immunity; second, if the statute constitutes a waiver of sovereign immunity, that waiver is limited to instances where

VOPA is suing on behalf of another, as compared to this suit where it is suing in its own name; and third, the waiver is inapplicable where the protection and advocacy system is a state agency rather than a non-profit entity.

The analysis of VOPA's position is informed by several basic principles. First, it is settled that a wavier of this sort must be prompted by a Congressional manifestation of "a clear intent to condition participation in the programs. . . on a State's consent to waive its constitutional immunity." Booth v. State of Md., 112 F.3d 139, 145 (4th Cir. 1997) (quoting Atascadero State Hospital v. Scanlon, 473 U.S. 234, 247 (1985)). Second, "[a] waiver must be unequivocally expressed in statutory text." Madison v. Virginia, 474 F.3d 118, 130 (4th Cir. 2006) (quoting Lane v. Pena, 518 U.S. 187, 192 (1996)). Third, it is established that general participation in a federal program or the receipt of federal funds is insufficient to waive sovereign immunity. Id. (citing Atascadero, 473 U.S. at 246-47). Finally, consent to suit is never implied and ambiguities are construed in favor of immunity. Id. at 131 (citing Atascadero, 473 U.S. at 247 and United States v. Nordic Village, Inc., 504 U.S. 30, 34 (1992)).

Cases in which courts have found waiver have involved statutes with far more explicit provisions than the one VOPA has cited here. The requisite expression of "a clear intent to

condition participation . . . on a State's consent to waive its constitutional immunity" cannot be found in the text of § 15044(b)(1). See Hoffman v. Connecticut Dep't of Income Maint., 492 U.S. 96 (1989) (finding no clear statement of intent to waive sovereign immunity and thus no abrogation of sovereign immunity in § 106 of the Bankruptcy Code); Employees of Dep't of Public Health and Welfare v. Dep't of Public Health and Welfare, 411 U.S. 279 (1973) (finding no abrogation of sovereign immunity under the Fair Labor Standards Act).

VOPA asserts that Defendants' argument relies on cases in which plaintiffs sought monetary damages. However, VOPA has provided no decision which supports a differentiation between cases involving damages versus those involving injunctive relief, and the doctrine does not support such a distinction. VOPA relies on Litman v. George Mason University, 186 F.3d 544 (4th Cir. 1999), for articulating the standard for determining waiver through consent. Litman, consistent with other precedent on the issue, requires clear waiver, with no differentiation between the type of relief sought. Id. at 550-551 (requiring a "clear declaration" by the State of its waiver and stating that "mere receipt of federal funds cannot establish that a State has consented to suit in federal court") (internal citations and quotations omitted).

In Litman, the Fourth Circuit found a clear conditional waiver of sovereign immunity where the relevant statute included the provision "A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal Court for a violation of [select civil rights statutes]." 42 U.S.C. § 2000d-7(a)(1). See also Constantine v. Rectors and Visitors of George Mason Univ., 411 F.3d 474, 492 (4th Cir. 2005) (expanding on Litman to find same provision to be an effective waiver of the Eleventh Amendment). Another example of a statute that has been considered to establish a clear waiver of sovereign immunity is 20 U.S.C. § 1403, part of the Individuals with Disabilities Education Act ("IDEA"), which provides: "a State shall not be immune under the eleventh amendment to the Constitution of the United States from suit in Federal Court for a violation of [the IDEA]." See VOPA v. Virginia, 262 F. Supp. 2d 648, 655 (E.D. Va. 2003).

In Madison v. Virginia, the Fourth Circuit analyzed whether the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") contained a provision requiring waiver of sovereign immunity. 474 F.3d 118 (4th Cir. 2006). The text of the statute provided that any person may "assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000cc-2(a). The Court of Appeals found that, by voluntarily accepting

10

federal correctional funds in the face of this provision, the State consented to federal jurisdiction for at least some form of relief. Madison, 474 F.3d at 131. However, strictly construing the scope of the waiver, the Fourth Circuit held that the statute fell short of the "unequivocal textual expression necessary to waive State immunity from suits for damages," explaining that the statute made no reference to monetary relief or even to sovereign immunity generally. Id.

The provision on which VOPA relies does not create any right to sue, much less indicate un unmistakable intent to waive state immunity from any suit. In stating that "[n]othing in this title shall preclude. . . ," 42 U.S.C. § 15044(b)(1) simply indicates an intent not to abrogate any preexisting rights to sue, but the provision does not create any new rights. Sovereign immunity would bar VOPA's ability to bring this lawsuit if there were no other exception to the immunity.

VOPA also presents a quasi-estoppel theory, arguing that Defendants should not now be allowed to argue the invalidity of a provision on which the State has relied to receive federal funding, but that argument assumes a non-existent position. Defendants are not arguing that any provision of the PAIMI or DD Acts is invalid; merely that the Acts contain no unequivocal statement of consent to suit. The quasi-estoppel argument

11

theory is neither persuasive nor useful in deciding the current motion.[2]

### b. Ex parte Young

It is uncontested that VOPA has filed this action against officials in their official capacities, a predicate for the application of the Ex parte Young exception. Defendants argue that VOPA has not alleged an on-going violation of federal law. Defendants claim that they are following a federal regulation and, consequently, VOPA cannot allege an ongoing violation of federal law unless it first challenges the regulation. VOPA argues that its complaint satisfies the Ex parte Young exception in seeking injunctive relief against officials in their official capacities for an ongoing violation of federal law and that this Court must therefore deny the Defendants' motion.

In determining whether the Ex parte Young doctrine applies, a court "need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Verizon Md., Inc. v. Public Serv. Comm'n, 535 U.S. 635, 645 (2002) (internal quotations omitted). In Verizon, the Supreme Court overturned the Fourth Circuit's decision that the plaintiff's claim could not be brought under Ex parte Young

---

[2] It is not necessary for the Court to address the remainder of the Defendants' arguments relating to the waiver issue.

because the challenged order was probably not inconsistent with federal law after all. Id. at 646. In doing so, the Court explained that "the inquiry into whether suit lies under Ex parte Young does not include an analysis of the merits of the claim." Id.

Application of the decision in Verizon here necessitates the conclusion that the action can proceed. First, VOPA has alleged an ongoing violation of federal law: that Defendants continue to refuse to provide records as required under the DD and PAIMI Acts. ("By refusing to provide the access requested by VOPA, Defendants have violated the DD Act/PAIMI Act and the regulations promulgated pursuant to it.") (Compl. ¶¶ 42, 50.) As set forth in Part B.1 above, the Complaint here is legally sufficient. Second, VOPA seeks relief that is properly characterized as prospective: an injunction that the officials prospectively release the records. The argument of the Defendants that they properly relied on the federal regulations is an argument on the merits of the claim and does not bring this case outside of the Ex parte Young exception.

Moreover, several courts of appeals have held that conduct such as that in which the Defendants are engaged violates federal law and that the cited federal regulations are invalid. See, e.g., Missouri Prot. & Advo. Servs. v. Missouri Dep't Mental Health, 447 F.3d 1021 (8th Cir. 2006) (finding that

13

interpretation of PAIMI set out in 42 C.F.R. § 51.41(c)(4) is unreasonable and that PAIMI preempts Missouri law in upholding district court's grant of summary judgment and injunction to DMH to disclose records); <u>Prot. and Advo. for Pers. with Disabilities v. Mental Health & Addiction Servs.</u>, 448 F.3d 119 (2d Cir. 2006) (finding that Congressional intent to give access to "all records" with PAIMI was clear and therefore finding it unnecessary to determine whether regulations were a permissible construction of the statute).

In sum, this action falls within the purview of <u>Ex parte Young</u>. The motion to dismiss on sovereign immunity grounds therefore will be denied.

### c. Special State Sovereignty Interests

Defendants allege that the claim involves Virginia's "special sovereignty interests" which, according to Defendants, trumps the <u>Ex parte Young</u> exception and compels the Court to abstain from interfering. Defendants argue that, where there is a dispute between branches or agencies with a State's government or between a State and its political subdivisions, federal courts may not interfere. VOPA argues that Defendants are seeking to expand the concept beyond the limits established by the decisions of the Fourth Circuit.

VOPA is correct in asserting that special sovereignty interests are not at stake in this action. Cases in which a

federal court should not interfere due to special sovereignty interests are those in which the federal court is called to adjudicate issues that are uniquely a state's concern, most commonly, the state's internal budgetary arrangements. See Kelly v. Metropolitan County Bd. of Educ., 836 F.2d 986, 998, 989 (6th Cir. 1987) (deeming it inadvisable to adjudicate whether the tax burden for desegregation would fall on the state at large or individual school districts as "essentially an internal dispute between two local governmental entities," and finding suit independently barred as "one for the recovery of money from the state"); Stanley v. Darlington County Sch. Dist., 84 F.3d 707, 716 (4th Cir. 1996) (declining "to determine the allocation of a state's financial resources"); Harris v. Angelina County, 31 F.3d 331, 338 (5th Cir. 1994) (declining to decide a claim for contribution from a political subdivision of a state against the state itself).

In contrast, the Court here is being asked to adjudicate a violation of federal law that does not interfere with the prerogative of the State. Accordingly, it is appropriate to follow the Fourth Circuit's decision in Antrican v. Odom and allow the Complaint to proceed. 290 F.3d 178 (4th Cir. 2002). In Antrican, the Fourth Circuit found that a suit to enjoin compliance with the Medicaid Act was permissible under the

Eleventh Amendment. Finding the Defendants' claim of "special sovereignty interests" inapplicable, the Court explained:

> This case, however, does not present a special sovereignty interest that would allow North Carolina to use its sovereign immunity shield to avoid an otherwise proper Ex parte Young action. Rather, it involves a federally designed healthcare program in which the federal government has invited the States to participate if they agree to certain federally established conditions. "A state's interest in administering a welfare program at least partially funded by the federal government is not such a core sovereign interest as to preclude the application of Ex parte Young."

Id. at 189 (citations omitted).

As in Antrican, this case involves a federally designed program for persons with disabilities and mental health issues in which the federal government has invited the States to participate if they agree to certain federally established conditions. Defendants would have this Court refrain from deciding any cases brought by a state agency against another state agency. However, Defendants have cited no decision which supports such a broad rule. It is the nature of the issue to be decided, not who brings suit, that potentially implicates special sovereignty interests. Indeed, many of the PAIMI cases cited by both sides were brought by the relevant state's protection and advocacy system, and obviously adjudicated despite the presence of state agencies on opposing sides. See

Missouri Prot. & Advo. Servs. v. Missouri Dep't of Mental Health, 447 F.3d 1021 (8th Cir. 2006); Prot. & Advo. for Persons with Disabilities v. Mental Health & Addiction Servs., 448 F.3d 119 (2d Cir. 2006) (stating that "OPA is a state-created agency").[3] No special sovereignty interests are implicated in this action that would compel this Court to abstain from adjudication, and the case may proceed.

### CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the Renewed Motion to Dismiss (Docket No. 22) will be denied.

It is so ORDERED.

```
                    /s/              REP
                    Robert E. Payne
                    Senior United States District Judge
```

---

[3] While the agency status of a plaintiff likely would be relevant in a § 1983 action, which requires suit to be brought by a "person," that simply is not the case here because this action is not brought under § 1983. See Virginia Office for Prot. and Advo. v. Reinhard, 405 F.3d 185, 189-190 (4th Cir. 2005) (finding that VOPA, as a state agency, was not a "person" within the meaning of 42 U.S.C. § 1983, and hence had no standing to bring suit under that statutory provision).