IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| THE COMMONWEALTH OF VIRGINIA, | : | |
| VIRGINIA OFFICE FOR PROTECTION | : | |
| AND ADVOCACY, | : | |
| | : | |
| Plaintiff, | : | Case No. 3:07CV734(REP) |
| | : | |
| v. | : | |
| | : | |
| JAMES S. REINHARD, in his official | : | |
| Capacity as Commissioner, Department | : | |
| of Mental Health, Mental Retardation | : | |
| and Substance Abuse Services, of the | : | |
| Commonwealth of Virginia, DENISE | : | |
| D. MICHELETTI, in her official capacity | : | |
| as Director, Central Virginia Training | : | |
| Center, and CHARLES M. DAVIS, in his | : | |
| Official capacity as Director, Central | : | |
| State Hospital, | : | |
| | : | |
| Defendants. | | |

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM IN SUPPORT**

Plaintiff, the Virginia Office for Protection and Advocacy (VOPA) submits this

motion for summary judgment and memorandum in support pursuant to Rule 56 of the

Federal Rules of Civil Procedure.

**I.  LISTING OF UNDISPUTED FACTS PURSUANT TO LOCAL RULE 56(B)**

1.  The Protection and Advocacy for Individuals with Mental Illness Act of 1986

(PAIMI) 42 U.S.C. §§ 10801-10851 helps States to establish and operate

protection and advocacy systems to protect the rights of, and advocate for, the

mentally ill.  The Developmental Disability Assistance and Bill of Rights Act

(DD Act), 42 U.S.C. §§ 15001-15045, performs a similar function for the developmentally disabled.  Memorandum in Support of Motion to Dismiss, p. 3.

2.   VOPA is an independent state agency that serves as the Commonwealth's protection and advocacy agency.  Memorandum in Support of Motion to Dismiss, p. 3.

3.   Defendant James Reinhard, is the Commissioner, DMHMRSAS.  The Central Office, DMHMRSAS, is located in Richmond, Virginia. The Commissioner, DMHMRSAS, is responsible for the supervision and management of the Department and its state facilities.  Code of Va. § 37.2-304.  Complaint, ¶ 10; Answer and Affirmative Defenses, ¶ 10.

4.   Defendant Denise Micheletti is the Director, CVTC.  CVTC is a DMHMRSAS-operated institution for persons with mental retardation located in Amherst County, Virginia.  The Director, CVTC, is responsible for "the safe, efficient and effective operation" of the facility and for compliance with "all applicable federal and state statutes, regulations, policies and agreements."  Code of Va. § 37.2-707. Complaint, ¶ 11; Answer and Affirmative Defenses, ¶ 11.

5.   Defendant Charles Davis is the Director, CSH.  CSH is a DMHMRSAS-operated institution for persons with mental illness located in Dinwiddie County, Virginia. The Director, CSH, is responsible for "the safe, efficient and effective operation" of the facility and for compliance with "all applicable federal and state statutes, regulations, policies and agreements."  Code of Va. § 37.2-707.  Complaint, ¶ 12; Answer and Affirmative Defenses, ¶ 12.

6. Defendants refuse to disclose the peer review materials requested by plaintiff. Response to the Motion for a Preliminary Injunction, p. 2; Memorandum in Support of Motion to Dismiss, p. 15.

7. On or about October 18, 2006, an individual with mental retardation and mental illness hereinafter referred to as "Resident A", died while a resident of CVTC. Resident A had had a decades-long documented history at CVTC of ingesting non-edible items. During October 2006, Resident A began to show symptoms of bowel obstruction. He was transported to the hospital. On October 10, 2006, An exploratory laparotomy was performed and two latex gloves were discovered in his intestines. The gloves were surgically removed. Resident A died on October 18, 2006. Complaint, ¶ 13; Answer and Affirmative Defenses, ¶ 13.

8. On November 16, 2006, VOPA requested, in writing, that CVTC provide VOPA with all records related to Resident A's death including any risk management review, baseline analysis review, or mortality review. Complaint, ¶ 15; Answer and Affirmative Defenses, ¶ 15.

9. On June 5, 2007, VOPA renewed its request, in writing, for the report of the baseline analysis review. Complaint, ¶ 16; Answer and Affirmative Defenses, ¶ 16.

10. On July 12, 2007, VOPA renewed its request in writing for the baseline analysis review and risk management review. Complaint, ¶ 17; Answer and Affirmative Defenses, ¶ 17.

11. The baseline analysis review and the risk management review regarding the incident involving Resident A have not been provided to VOPA.  Complaint, ¶ 18; Answer and Affirmative Defenses, ¶ 18.

12. On or about January 11, 2007, an individual with mental retardation hereinafter referred to as "Resident B" was assaulted at CVTC by another resident.  Resident B was observed by CVTC staff running from Resident B's room covered in blood.  One staff member went to Resident B's room where she found multiple pieces of human ear tissue and a large amount of blood on the floor.  Complaint, ¶ 19; Answer and Affirmative Defenses, ¶ 19.

13. On June 8, 2007, VOPA requested, in writing, records regarding the injuries to Resident B including any risk management review or baseline analysis review conducted regarding the incident.  Complaint, ¶ 21; Answer and Affirmative Defenses, ¶ 21.

14. On July 12, 2007, VOPA renewed its request, in writing, for the baseline analysis review and risk management review.  Complaint, ¶ 22; Answer and Affirmative Defenses, ¶ 22.

15. The risk management review regarding the incident involving Resident B has not been provided to VOPA.  Complaint, ¶ 23; Answer and Affirmative Defenses, page ¶ 23.

16. On, or about March 22, 2007, an individual with mental illness hereinafter referred to as "Resident C" died while a patient at CSH.  Resident C had been held in some form of restraints for a period of approximately 33 hours before

4

being released.  About thirty minutes after Resident C was released from restraints, several CSH staff entered Resident C's bedroom to attempt to place Resident C into restraints.  During the restraint incident, Resident C complained of being unable to breathe.   Attempts to revive Resident C failed and Resident C was transported to a community hospital and was pronounced dead.  Complaint, ¶ 25; Answer and Affirmative Defenses, ¶ 25.

17. On, May 31, 2007, VOPA requested in writing records relating to the death of Resident C, including the root cause analysis, mortality review, and risk management analysis.  Complaint, ¶ 27; Answer and Affirmative Defenses, ¶ 27.

18. On or about August 13, 2007, counsel for Defendants informed VOPA that its requests for records was denied by the Commissioner, DMHMRSAS, on the basis of the peer review privilege.  Complaint, ¶ 28; Answer and Affirmative Defenses, ¶ 28.

19. On August 29, 2007, VOPA renewed its request, in writing, for the mortality review, root cause analysis, and risk management review regarding Resident C. Complaint, ¶ 29; Answer and Affirmative Defenses, ¶ 29.

20. The root cause analysis and the mortality review regarding the incident involving Resident C have not been provided to VOPA.  Complaint, ¶ 30; Answer and Affirmative Defenses, ¶ 30.

## II. ARGUMENT

A. <u>Summary Judgment Standard</u>

Summary Judgment is appropriate in cases where "there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." Fed R.Civ.P 56(c); *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986).  A "material fact" is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   A disputed material fact presents a "genuine issue" only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Id.

    B. P&A System Access Authority

The issue in this case is the reconciliation of the federal statutes providing VOPA the authority to access records, including peer review records, during the course of its investigation of abuse and neglect and the Virginia statute pertaining to peer review materials.  VOPA's authority comes from the statutory scheme that Congress created in enacting the DD and PAIMI Acts.

The DD and PAIMI Acts require that protection and advocacy systems have access to facilities and to records of individuals with disabilities. See 42 U.S.C. §§ 15043, 10805(a)(4) and 10806. Courts have consistently held that the DD and PAIMI Acts require states to permit the P&A agency to operate effectively, and with broad discretion and independence in gaining access to facilities and records.  The court in *Advocacy System*, Inc. *v. Cotten*  expounded upon this obligation as follows:

> The Act not only describes the range of services to be provided by the protection and advocacy systems, it also states that the systems **must have the authority** to perform these services. The state cannot satisfy the requirements of the [DD Act] by establishing a protection and advocacy system which has this authority in theory, but then taking action which prevents the system from exercising that authority.

929 F.2d 1054, 1058 (5th Cir. 1991) (emphasis in original). As the court noted in

*Alabama Disabilities Advocacy Program v. Tarwater Developmental Ctr.*, any other

reading "would attribute to Congress an intent to pass an ineffective law."  894 F. Supp.

424, 429 (M.D. Al. 1995).

   The PAIMI Act provides that a P&A system "shall" have access to facilities that

provide care and treatment for individuals with developmental disabilities and to "all"

records of those individuals.  42 U.S.C. §§ 10805, 10806.  The regulations to the PAIMI

Act further define "records" to include:

> (2) Reports prepared by an agency charged with
> investigating abuse neglect, or injury occurring at a facility
> rendering care or treatment, or by or for the facility itself,
> that describe any or all of the following:
> (i) Abuse, neglect, or injury occurring at the facility;
> (ii) The steps taken to investigate the incidents;
> (iii) Reports and records, including personnel records,
> prepared or maintained by the facility, in connection with
> such reports of incidents; or
> (iv) Supporting information that was relied upon in creating
> a report, including all information and records used or
> reviewed in preparing reports of abuse, neglect or injury
> such as records which describe persons who were
> interviewed, physical and documentary evidence that was
> reviewed, and the related investigative findings.

42 C.F.R. §51.41

   The DD Act is the counterpart to the PAIMI Act for individuals with

developmental disabilities.  The DD Act provides that P&A systems have the authority to

access "all records of…any individual with a developmental disability."  42 U.S.C. §

15043(a)(2)(I).  Further, the definition of "record" within the DD Act, like the PAIMI

Act, includes "a report prepared or received by any staff at any location at which

services, supports, or other assistance is provided to individuals with developmental

disabilities" and "a report prepared by an agency or staff person charged with

investigating reports of incidents of abuse or neglect, injury, or death occurring at such location, that describes such incidents and the steps taken to investigate such incidents[.]" 42 U.S.C. § 15043(c).

In this case, VOPA is conducting investigations into deaths and serious injuries at facilities operated by the defendants as set forth in the Complaint.  VOPA has requested records that are in the custody of defendants in conjunction with those investigations pursuant to its authority under the PAIMI and DD Acts.

C. P&A Access to Peer Review Records

Four Federal Circuit Courts have held that the access authority of P&As extends to peer review records.  *Missouri Protection & Advocacy v. Missouri Department of Mental Health*, 447 F.3d 1021 (8th Cir. 2006); *Protection & Advocacy for Persons with Disabilities, State of Connecticut v. Mental Health and Addiction Services*, 448 F.3d 119 (2nd Cir. 2006); *Center for Legal Advocacy v. Hammons*, 323 F.3d 1262 (10th Cir. 2003); *Pennsylvania Protection & Advocacy, Inc. v. Houstoun*, 228 F.3d 423 (3rd Cir. 2000).

The Third Circuit Court of Appeals held that "a peer review report is a 'record[] of …an [] individual' under [PAIMI] and that the P&A "was entitled to have 'access' to [peer review records]."  *Pennsylvania Protection & Advocacy, Inc. v. Houstoun,* 228 F.3d at 427.  The *Houstoun* case involved the Pennsylvania P&A's attempt to access peer review records in order to investigate the suicide of a resident of a state-operated psychiatric hospital.  *Id*. at 425-426.  The state denied the P&A access, claiming that the records were protected under the state's peer review statute.  *Id*. at 426.  The Pennsylvania peer review statute provides that "[t]he proceedings and records of a review committee shall be held in confidence and shall not be subject to discovery or

introduction into evidence in any civil action." 63 Pa. Stat. § 425.4. The *Houstoun* court ruled that peer review reports fell within the scope of records to which the P&A was entitled access. 228 F.3d at 427. The court noted that the PAIMI Act authorizes P&As to access "all records of" an individual with mental illness and found that the plain language of the definition of "records" "encompasses the peer review reports at issue here, since they are clearly 'reports prepared by . . . staff of a facility rendering care and treatment.' *Id*. at 426. The court rejected assertions that: (1) only incident reports are covered by the term "records" and that (2) in any case, the records cannot be disclosable because they are the hospital's property, and not the "records of any individual" (the phrase referenced in the PAIMI Act's access provisions). *Id*. at 426-427.

The *Houstoun* court held that the PAIMI Act clearly preempts "any state law that gives a healthcare facility the right to withhold" peer review reports. *Id*. at 428. However, the court concluded that there is no conflict between the state law in issue and federal law because the P&A sought the peer review records as part of a statutorily authorized investigation and not as a means of discovery or to introduce them in a civil action. *Id*. The Court also noted that the PAIMI Act requires that a P&A maintain the confidentiality of such reports, which further supports the finding that disclosure to the P&A is not prohibited by state law. *Id*. at 428-429. The court observed that the state statute does not say who is required to keep the report in confidence, and that the statute has been interpreted as permitting release under certain circumstances. *Id*. at 428.

The Second, Eighth and Tenth Circuit decisions essentially follow the reasoning of the *Houstoun* court, holding that the PAIMI Act preempts state peer review laws because the PAIMI Act unambiguously gives P&A systems access to all records related

to an individual, including peer review records.  *Protection & Advocacy for Persons With Disabilities v. Mental Health & Addiction Services*, 448 F.3d 119 (2d Cir. 2006), *Missouri Protection and Advocacy Services v. Missouri Department of Mental Health*, 447 F.3d 1021, (8th Cir. 2006), *Center for Legal Advocacy v. Hammons*, 323 F.3d 1262 (10th Cir. 2003).

Records requested by VOPA in conjunction with its investigations of deaths and serious injuries at defendants' facilities include records that the defendants have designated as peer review materials and have refused to produce.

D. Defendants are state officials acting in their official capacity

The defendants are state officials acting in official capacities and have a specific connection to the alleged violation of federal law.  The Commissioner, Department of Mental Health, Mental Retardation and Substance Abuse Services (DMHMRSAS), is responsible for the supervision and management of the Department and its state facilities. Code of Va. § 37.2-304.  The other named defendants are directors of facilities operated by DMHMRSAS and are responsible for "the safe, efficient and effective operation" of the facility and for compliance with "all applicable federal and state statutes, regulations, policies and agreements."  Code of Va. § 37.2-707.

E. Ongoing violation of federal law

The undisputed facts demonstrate that the defendants are in violation of federal law.  VOPA has requested records to which it is entitled under federal law and the defendants have refused to provide those records.

The regulations to the PAIMI and DD Acts which purport to exempt peer review materials from protection and advocacy system access authority state that: "except that

nothing in this section is intended to preempt State law protecting records produced by medical care evaluation or peer review committees."  42 C.F.R. § 51.41(c)(4); 45 C.F.R. 1386.22(c)(1).  Federal law, however, provides that a protection and advocacy system shall have access to "all…records of an individual."  42 U.S.C. § 15043; 42 U.S.C. § 10805.  All of the federal courts that have considered this issue have determined that the regulations relied upon by defendants in the instant case are an unreasonable interpretation of law.  The decision in the *Houstoun* case is illustrative, where the decision by then Judge Alito concluded that "[t]he interpretation of PAMII set out in 42 C.F.R. §  51.41(c)(4) does not represent a reasonable interpretation of the statute, and we must therefore reject it."  *Houstoun*, 228 F.3d at 427, *citing*, *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843-44 (1984); *See also*, *Missouri Protection & Advocacy Services v. Missouri Dept. of Mental Health*, 447 F.3d 1021, 1024 (8th Cir. 2006); *Center For Legal Advocacy v. Hammons*, 323 F.3d 1262, 1272 (10th Cir. 2003); *Disability Law Center of Alaska, Inc. v. North Star Behavioral Health*, 2008 WL 853639 (D.Alaska March 27, 2008).  In *Protection & Advocacy for Persons with Disabilities, State of CT v. Mental Health and Addiction Services*, the Court of Appeals for the Second Circuit considered the decision of the only court to decide otherwise, the Supreme Court of New Hampshire, and found that the New Hampshire court did not consider whether the regulation was a valid exercise of the federal agency's rulemaking authority and failed to engage in the analysis required by *Chevron*.  448 F.3d 119, 126 (2nd Cir. 2006).  The Second Circuit then held that, based upon the plain language of the PAIMI Act, the state agency protection and advocacy system had the

authority to access peer review records held by state facilities operated by the state's mental health services agency. 448 F.3d at 128.

The reliance of defendants on the regulations in support of their contention that there is no ongoing violation of federal law by the defendants is further undercut by the very language of the statute which provides that

> [i]f the laws of a State prohibit an eligible system from obtaining access to the records of individuals with mental illness in accordance with section 10805(a)(4) of this title and this section, section 10805(a)(4) of this title and this section shall not apply to such system before--
> (i) the date such system is no longer subject to such a prohibition; or
> (ii) the expiration of the 2-year period beginning on May 23, 1986, whichever occurs first.

42 U.S.C. § 10806(b)(2)(C).

The Virginia law regarding peer review records prohibits disclosure only in the limited circumstance of "legal discovery proceedings." Code of Va. § 8.01-581.17B. The statute also contains a provision for disclosure "for good cause arising from extraordinary circumstances" and thus does not constitute an absolute prohibition. *Id.* In any event, to the extent that the state law regarding access to peer review materials conflicts with the DD and PAIMI Acts it is preempted by federal law. *Protection & Advocacy for Persons with Disabilities, State of Connecticut v. Mental Health and Addiction Services*, 448 F.3d at 129; *Missouri Protection & Advocacy v. Missouri Department of Mental Health*, 447 F.3d 1021 (8th Cir. 2006); *Center for Legal Advocacy v. Hammons*, 323 F.3d at 1273; *Pennsylvania Protection & Advocacy, Inc. v. Houstoun*, 228 F.3d at 428.

    F. <u>VOPA should be granted summary judgment and the declaratory relief it seeks</u>

The undisputed facts of this case conclusively establish that defendants violated VOPA's right and duty to obtain peer review records in the course of investigating allegations of neglect, as set forth in the PAIMI and DD Acts.   Therefore, this Court should grant VOPA's Motion and enter final judgment granting VOPA the declaratory relief it seeks: Declaratory Judgments, pursuant to 28 U.S.C. § 2201, holding that  42 C.F.R. § 51.41(c)(4) and 45 C.F.R. § 1386.22(c)(1) are invalid, that defendants violated VOPA's rights under the PAIMI and DD Acts, and setting forth VOPA's right to access the records sought in this action pursuant to the PAIMI and DD Acts.   When, as here, the plaintiff affirmatively alleges a violation of federal law, declaratory relief is appropriate if there are no material facts in dispute.  *Columbia Gas Transmission Corporation v. Drain*, 237 F.3d 366, 370 (4th Cir. 2001).  Doing so will vindicate federal law and make a clear statement setting forth VOPA's authority to conduct thorough investigations into these and other allegations of the abuse and neglect of individuals with disabilities.  In addition, because VOPA is currently conducting investigations at facilities operated by defendants and anticipates future investigations, a declaratory judgment will serve to guide the parties in their future dealings, thereby reducing the probability of future litigation. *Shoney's Inc. v. Schoenbaum*, 686 F.Supp. 554, 564  (E.D.Va. 1988), ("The purpose of a declaratory judgment is to avoid the accrual of damages which possibly could be avoided by one who is not certain of the full nature of his rights.").

There is a very real likelihood that the parties will again find themselves in a dispute over VOPA's access to peer review records.  Therefore, this Court should enter a Permanent Injunction requiring Defendants to provide VOPA, upon request, peer review

records relating to abuse and neglect investigations conducted by VOPA pursuant to its

authority under the DD and PAIMI Acts.

G. Conclusion

For the foregoing reasons, the plaintiff respectfully requests that this court grant

its motion for summary judgment and enter final judgment as follows:

1.   Enter a Declaratory Judgment, pursuant to 28 U.S.C. § 2201,
     holding that 42 C.F.R. § 51.41(c)(4) and 45 C.F.R. § 1386.22(c)(1)
     are invalid, that defendant violated VOPA's rights under the
     Protection and Advocacy for Individuals with Mental Illness
     (PAIMI) Act, 42 U.S.C. 10801, *et seq.* and the Developmental
     Disabilities Assistance and Bill of Rights (DD) Act, 42 U.S.C §
     15001, *et seq.*, and setting forth VOPA's rights to request and
     receive the peer review records sought in this action.

2.   Enter a Permanent Injunction ordering defendants to provide
     VOPA with peer review records requested by VOPA pursuant to its
     federal access authority under the PAIMI and DD Acts.

3.   Grant VOPA such other and further relief which to this Court
     seems just and proper.

_____/s/_____

Paul J. Buckley
Virginia Bar Number 33794
Managing Attorney
Virginia Office for Protection and Advocacy
1910 Byrd Avenue, Suite 5
Richmond, VA 23230
(804) 662-7082
(804) 662-7431
paul.buckley@vopa.virginia.gov

CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2008, I electronically filed the foregoing

Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment with the

Clerk of the Court using the CM/ECF system which will send notification of such filing

to the following:

William E. Thro
Virginia Bar Number 42179
State Solicitor General
Office of the Attorney General
900 East Main Street
Richmond, VA 23219
804-786-2436
804-786-1991
wthro@oag.state.va.us

Jane S. Hickey
Virginia Bar Number 16892
Senior Assistant Attorney General
Office of the Attorney General
900 East Main Street
Richmond, VA 23219
804-786-1927
804-371-8718
jhickey@oag.state.va.us

Stephen R. McCullough
Virginia Bar Number 41699
Deputy State Solicitor General
Office of the Attorney General
900 East Main Street
Richmond, VA 23219
804-786-2436
804-786-1991
smccullough@oag.state.va.us

Allyson K. Tysinger
Virginia Bar Number 41982
Assistant Attorney General
Office of the Attorney General
900 East Main Street
Richmond, VA 23219
804-225-4205
804-371-8718
atysinger@oag.va.us

_____/s/_____
Paul J. Buckley
Virginia Bar Number 33794
Managing Attorney
Virginia Office for Protection and Advocacy
1910 Byrd Avenue, Suite 5
Richmond, VA 23230
(804) 662-7082
(804) 662-7431
paul.buckley@vopa.virginia.gov

15